1  Yvette Heinze
   Registered Professional Reporter
2  Certified Shorthand Reporter
   125 Central Avenue West
3  Great Falls, MT 59404
   406-422-8619
4  yvette_heinze@mtd.uscourts.gov

5  United States Court Reporter

6

7

8              IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF MONTANA
9                    GREAT FALLS DIVISION

10
   UNITED STATES OF AMERICA,      )  No. CR 17-48-GF-BMM
11                                 )
                  Plaintiff,       )
12       vs.                       )
                                   )
13                                 )  TRANSCRIPT OF MOTION HEARING
   JAYCOB TYLER KUTZERA,           )
14                                 )
                  Defendant.       )
15

16

17           BEFORE THE HONORABLE BRIAN MORRIS
            UNITED STATES DISTRICT COURT JUDGE
18             FOR THE DISTRICT OF MONTANA

19
            Missouri River Federal Courthouse
20             125 Central Avenue West
                 Great Falls, MT 59404
21            Wednesday, December 13, 2017
                 2:35 p.m. to 3:03 p.m.
22

23

24

25           Proceedings recorded by machine shorthand
        Transcript produced by computer-assisted transcription

1                          **APPEARANCES**

2  For the Plaintiff:

3                 RYAN G. WELDON
                  US ATTORNEY'S OFFICE
4                 119 1st Avenue North, Suite 300
                  Great Falls, MT 59401
5

6  For the Defendant:

7                 EVANGELO ARVANETES
                  FEDERAL DEFENDERS OF MONTANA
8                 104 2nd Street South, Suite 301
                  Great Falls, MT 59401-3645
9

10
   (Defendant present via phone)
11

12

13                         *  *  *

14

15                 **C O N T E N T S**

16
                                                   **PAGE**
17
   PROCEEDINGS                                        3
18 REPORTER'S CERTIFICATE                             25

19

20

21

22

23

24

25

PROCEEDINGS

1

2       (Defendant present via phone.)

3       (Open court.)

4              THE COURT:  Please be seated.

5              Madam Clerk, please call the next case on the Court's

6   calendar.

7              THE CLERK:  This Court will now conduct a motion

8   hearing in Cause Number CR 17-48-GF-BMM, United States of

9   America versus Jaycob Tyler Kutzera.

10             THE COURT:  Good afternoon, Mr. Weldon.

11             MR. WELDON:  Good afternoon, Your Honor.

12             THE COURT:  Too bad you aren't paid by the hearing.

13             MR. WELDON:  Yes, Your Honor.

14             THE COURT:  Good afternoon, Mr. Arvanetes.

15             MR. ARVANETES:  Good afternoon.

16             THE COURT:  And, Mr. Kutzera, can you hear us there,

17  sir?

18             THE DEFENDANT:  Good afternoon.  Yes.  Yes, Your

19  Honor.

20             THE COURT:  All right.  Madam Clerk -- can you pull

21  him -- is he on the telephone, or do we have a video?

22             THE CLERK:  Just telephone.

23             THE COURT:  All right.  Mr. Kutzera, can you hear me

24  okay, sir?

25             THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Okay.  And where are you located?

2          THE DEFENDANT:  I'm located in California.  Apple

3   Valley, California, Your Honor.

4          THE COURT:  You are at a courthouse; is that correct?

5          THE DEFENDANT:  I'm at my house, Your Honor.

6          THE COURT:  Oh, your house.  Okay.

7          MR. ARVANETES:  Just as background, Your Honor, the

8   California Riverside Federal Courthouse could not get the video

9   until 4:00.

10          THE COURT:  All right.

11          MR. ARVANETES:  3:00, their time; 4:00, our time.  So

12   the phone was the next best thing.

13          THE COURT:  All right.  We'll make do here.

14          We are here on a motion filed by the United States

15   Government regarding a number of issues during Mr. Kutzera's

16   trial.  So let me give you some background.  The grand jury

17   indicted Mr. Kutzera on June 28, 2017.  The United States

18   charged Mr. Kutzera with sexual exploitation of a child in

19   violation of Title 18, United States Code, 2251(a).

20          There are 36 counts, Mr. Arvanetes?

21          MR. ARVANETES:  Yes, Your Honor.

22          THE COURT:  There is also a forfeiture allegation.

23   This matter is set for trial for March 5th, 2018.  There are

24   six parts to the government's motion in limine.  We'll go

25   through each of those parts.  And, as we do, I think some of

1  them are uncontested.  So we can resolve those quickly.

2          The first issue the government raises relates to no

3  mention of the victim's full name.  As I understand this,

4  Mr. Kutzera does not oppose this request or protective order.

5  This would be during the pretrial and posttrial proceedings, as

6  well as in open court.

7          And it would also require elimination of any personal

8  identifiers, redaction of any exhibits that would be in the

9  record that contain information about the alleged victim's full

10  name.

11          Any objection, Mr. Arvanetes?

12          MR. ARVANETES:  No, Your Honor.

13          THE COURT:  Mr. Weldon, would this be a Jane Doe

14  designation?  How does the government wish to refer to the

15  alleged victim?

16          MR. WELDON:  Your Honor, the reference would just be

17  by first name only, and then it would not include the last name

18  or the middle name, Your Honor.

19          THE COURT:  The alleged victim's real first name?

20          MR. WELDON:  Correct.

21          THE COURT:  Okay.  Any objection, Mr. Arvanetes?

22          MR. ARVANETES:  No, Your Honor.

23          THE COURT:  All right.  That motion will be granted.

24          Madam Clerk, be sure that the record and exhibits in

25  any pretrial, trial, or posttrial proceedings redact the

1  victim's surname.

2          THE CLERK:  Yes, Judge.

3          THE COURT:  The alleged victim's.

4          The second issue relates to the alleged child

5  victim's other sexually explicit communication.  The government

6  contends that evidence exists that the alleged victim also may

7  have been sexually exploited online by persons other than the

8  defendant.  The government contends that these communications

9  with other adults should be inadmissible under Rules 401, 402,

10  and 403, the Federal Rules of Evidence.

11          Mr. Arvanetes, I understand you object to this

12  motion.

13          MR. ARVANETES:  Yes, Your Honor.  The government does

14  reference a United States versus Ogden case in its brief -- in

15  its memorandum, I mean.  And that goes to -- and I read the

16  case.  It goes to online actual chat logs that they wanted to

17  bring in of other people's communications.  That, I think,

18  certainly there can be a narrowing of an instruction that would

19  narrow the scope very much so, so that perhaps the only thing

20  we would want to elicit would be the fact that -- and I think

21  this kind of goes to the credibility of my client -- is that

22  she had -- she was chatting with other adult males in --

23          THE COURT:  What's the relevance?

24          MR. ARVANETES:  Like I said, it goes to the

25  credibility of my client.  You know, this isn't a -- as I put

1  in my response, she isn't a cyber naif.  She's a very

2  experienced -- a person who -- if you listen to her interview,

3  she's -- I mean, she talked about exchanging pictures with

4  another gentleman.  We're not interested in that at all.

5  There's no relevance.

6          THE COURT:  Well, what evidence are you interested in

7  admitting regarding her online activities?

8          MR. ARVANETES:  Just on cross-examination, whether

9  she was actively engaging others.

10          THE COURT:  Well, if she says "yes," what --

11          MR. ARVANETES:  And that would be it.

12          THE COURT:  If she says, "Yes, they were three

13  15-year-old boys" --

14          MR. ARVANETES:  That's fine.

15          THE COURT:  -- do you intend to use outside evidence

16  to impeach her?

17          MR. ARVANETES:  I don't think -- no, I mean, if she

18  says, "No," then I think it's extrinsic.  And, therefore, I

19  don't think I can bring in outside evidence for extrinsic

20  evidence.  But if she says, "Yes," then I move on with my

21  questioning.

22          THE COURT:  Move on to what?

23          MR. ARVANETES:  To other related matters, not related

24  to this.  In other words --

25          THE COURT:  But do you inquire -- if she says, "Yes,

1   I did," do you inquire, "Who were they?"

2          And she says, "Well, I had a 21-year-old person in
3   Idaho, a 30-year-old man in Colorado, and a 35-year-old man in
4   Nevada."

5          MR. ARVANETES:  And that's what Ogden talks about,
6   Your Honor.  That's not relevant.

7          THE COURT:  So you want to ask her on
8   cross-examination simply whether she has engaged in online
9   chats with other people before?

10          MR. ARVANETES:  Yes, sir.

11          THE COURT:  Other men or other people or what?

12          MR. ARVANETES:  I would let the Court -- certainly, I
13   prefer "men," but I would let the Court fashion something that
14   is very, very narrow in scope.

15          THE COURT:  Well, I guess, "men" implies adults.

16          MR. ARVANETES:  "Males," perhaps.  You know, that's
17   up to the Court.  I think it is not going too far and certainly
18   it is -- we're not asking all of this material that Ogden
19   requested, which the Court was correct on when it said it's not
20   relevant.  Even if you want to put it on the defense, it's not
21   an unlimited defense.

22          So I just wanted to make sure the jurors are aware
23   because I think we're going to actually --

24          THE COURT:  But the jurors are aware of what?

25          "Have you chatted with other males online?"

1    "Yes."

2    Okay.  Move on.

3    MR. ARVANETES:  Okay.

4    THE COURT:  Is the implication "wink, wink," that

5    this young girl knew what she was doing?

6    MR. ARVANETES:  That she knows about computers and

7    knows how to access these kind of chats.  I don't know how to

8    access this stuff, and maybe most of the jurors who are my age

9    and older probably don't.

10    THE COURT:  Why wouldn't it be enough to say, "Have

11    you initiated online chats before?"

12    "Yes, I have."

13    MR. ARVANETES:  I would -- Your Honor, I would --

14    that's why I put in my response.  I mean, if the Court wants to

15    fashion an appropriate type of questioning that it feels is a

16    balance between the 403 balancing test, I'm fine with that.

17    But I think you can't -- I think a blanket, simply,

18    I-can't-even-go-there kind of thing just --

19    THE COURT:  Mr. Weldon, what's the government's

20    position?

21    MR. WELDON:  Your Honor, the question I always come

22    back to is why do they want to introduce it?  And just to go

23    back to basics, the elements -- I mean, it's exactly what the

24    Court asked.  It's a wink and a nod to try to get information

25    to show that the victim has a propensity to engage in sexually

1   explicit conduct.  That's the purpose.  Why else would you ask
2   that?

3         And I think what's important and what I want the
4   Court to be aware of is, first of all, without even referring
5   to Rule 412, just focusing on the rules of evidence of whether
6   or not it's even relevant.  If you look at the jury
7   instructions, there would be three elements:  At the time, the
8   victim was under the age of 18 years old; second, the defendant
9   knowingly used the minor to take part in sexually explicit
10   conduct for the purpose of producing a visual depiction of such
11   conduct; and then the third element is the interstate
12   transportation, or the interstate nexus, to prove that
13   allegation.

14         It has nothing to do with whether or not she's done
15   it before, what her thinking was.  It's all focused on the
16   defendant's intent at that particular time.  And I can talk
17   more about the use and what that definition means when we get
18   into the fourth component of the defendant's brief.

19         But I do think that when you just look at the
20   instructions, it's completely irrelevant to anything that deals
21   with the elements.  And so that's without even referring to
22   Federal Rule of Evidence 412, which specifically prohibits this
23   sort of conduct where you are trying to prove that somebody
24   engaged in sexually explicit conduct at a later point in time.
25         And I do think that Mr. Arvanetes is correct.  The

1  case, I think, that clearly outlines this for the Court is the

2  Ogden case.  And in that case, Your Honor, it explains about

3  these online chats.  Just so the Court's aware, that's a Sixth

4  Circuit opinion.  And it says, "In those chat logs, the victim

5  mentioned sending explicit images of herself to other men.

6  According to Ogden, the chat logs show that one of those men

7  might have originally persuaded the victim to take the explicit

8  pictures later found on Ogden's hard drive."

9         And then the Court went on to say, "The problem with

10  Ogden's argument is that the chat logs were not admissible.

11  Evidence offered to prove that a victim engaged in other sexual

12  behavior," that that is not admissible under Rule 412.   "The

13  chat logs were this sort of evidence since the 'sexual

14  behavior' includes 'verbal conduct.'"

15         And then they go on to say, "The government's

16  interest in excluding the chat logs, in contrast, was strong.

17  The rape-shield rule encourages victims of sexual abuse to

18  report their abusers by protecting the victims' privacy."  And

19  then they go on to cite the committee notes, Your Honor.

20         All the government needed to prove for the enticement

21  charge was that Ogden induced the victim to engage in conduct

22  to produce at least one explicit image.  And the record

23  includes the victim's testimony that she masturbated on webcam

24  at Ogden's request while he watched.  Chat log evidence that

25  the victim sent images to other men would not impeach the

victim's testimony as to the specific incident and, indeed, might have bolstered the testimony.

THE COURT:  Mr. Weldon, I assume we're going to apply a similar rule to the defendant's online activities.

MR. WELDON:  Certainly.  In terms of the online activities as it relates to this offense, Your Honor?

THE COURT:  No, his other online activities.  We're not going to try to introduce evidence that he solicited other victims?

MR. WELDON:  I don't think that -- we would have to file a 404(b) notice for that, Your Honor, and there has not been one that's been filed.

THE COURT:  That's why I was hoping to get you to agree, but I understand --

MR. ARVANETES:  And there has been --

THE COURT:  Hold on, Mr. Arvanetes.

I know you're pitch-hitting here, so you're reluctant to -- but isn't it fair, if we're not going to allow Mr. Arvanetes to give you the "wink wink" to the jury, we shouldn't allow the government to have that same implication dangling there with Mr. Kutzera?  It's not his first chat with underaged girls.

MR. WELDON:  And I would agree with that if we had to prove the victim's intent, Your Honor, but we don't.  We have to prove the defendant's intent, and I think that is a critical

1    distinction and why we can look to 404(b) versus the 412 as the

2    rape-shield statute.  Because when you look at the elements,

3    there is no intent behind the victim.

4            THE COURT:  Let me ask you this, Mr. Weldon.  I just

5    presided over a trial where we had the blow-by-blow record of a

6    chat between an adult male and an undercover officer.

7            MR. WELDON:  Correct, Your Honor.

8            THE COURT:  All right.  Do we have similar messaging

9    or chat logs, whatever the electronic record is, between

10   Mr. Kutzera and the alleged victim?

11           MR. WELDON:  Oh, certainly, Your Honor, yes.

12           THE COURT:  All right.  Is there anything in that

13   dialogue where the alleged victim would disclose that she had

14   done this before?

15           MR. WELDON:  Not that I'm aware of, Your Honor.

16           THE COURT:  Are you aware of any, Mr. Arvanetes?

17           MR. ARVANETES:  I know in her interview she mentions

18   it.  In the chat logs, the ones that I focused on, which are

19   more pertinent to some of the pictures that -- well, some of

20   the pictures that came in, which are actually subject of a

21   notice.  There is a 404(b), 412 notice that has been filed.

22   And I know Mr. Weldon is pinch-hitting today, but I did not

23   address that because that was something that we're going to

24   address in a motion in limine by the motion hearing.

25           So I don't want to put Mr. Weldon in a position

1  because I know Ms. Peterson has probably, in her mind, relevant

2  arguments for that.

3          THE COURT:  Well, Mr. Arvanetes, let me ask you this

4  question:  What evidence do you have, either in interviews or

5  discovery material, that the alleged victim has engaged in

6  other online communications with adult males?

7          MR. ARVANETES:  Well, in the interview, in her

8  interview with police -- I guess this is -- I don't know if

9  it's closed hearing or not, but I guess it is.  I don't have to

10  say the name.

11          THE COURT:  Ms. Suenram is sworn to secrecy.

12          MR. ARVANETES:  She mentions a gentleman that she's

13  been exchanging pictures with.  She mentions multiple men that

14  she chats with but doesn't exchange pictures with within

15  this -- I think it's a Facebook adult sexual chat room.  I

16  don't know the avenues, but it's something that has to do with

17  Facebook.

18          THE COURT:  Mr. Weldon, is there an element here that

19  requires the government to show that the defendant knew that

20  the alleged victim was underage?

21          MR. WELDON:  Correct.  Yes, Your Honor.

22          THE COURT:  There is.

23          MR. WELDON:  Right.  And we will have evidence that

24  she informed the defendant that she was 12 years old and then

25  the conduct continued.

1    And, Your Honor, I will tell the Court -- because I

2  know that you're comparing, for example, the last trial that

3  you had -- we don't have any entrapment issues with this

4  because the government was never involved.  We found this after

5  the fact.  And I do think that's important when we get into the

6  fourth component because it mixes apples and oranges when we

7  talk about entrapment, when the government isn't involved here.

8    THE COURT:  You are chomping at the bit on the forth.

9  We'll get there momentarily.  Let me just rule on this one.

10    MR. WELDON:  Yes, Your Honor.

11    THE COURT:  I don't know enough yet about the case.

12  I'd like to see how the testimony comes in.

13    Mr. Arvanetes, if I were to allow it, it would be a

14  very limited discussion, depending, of course, on direct

15  examination what the witness testifies to.  So I'll take it

16  under advisement.  But it would be a very limited purpose, if

17  allowed at all.

18    MR. ARVANETES:  Your Honor, as an officer of the

19  Court, I will make sure that --

20    THE COURT:  And I recommend, in order to be safe, you

21  ask for a sidebar before cross-examination or before you intend

22  to ask any questions about that.

23    MR. ARVANETES:  And I won't mention it during my

24  opening, and I certainly will instruct my witnesses.

25    THE COURT:  That sounds fine.  Thank you,

1  Mr. Arvanetes.

2          All right.  Mr. Weldon, third issue.

3          MR. WELDON:  Yes, Your Honor.

4          THE COURT:  This is evidence related to the alleged

5  victim's sexual history.  And your argument is 412(a).  This is

6  the rape-shield law?

7          MR. WELDON:  Correct, Your Honor.

8          THE COURT:  All right.  So what evidence has been

9  developed that the alleged victim has any previous sexual

10 history?

11         MR. WELDON:  I think to the -- none that I'm aware

12 of, Your Honor.  I do think, maybe, the chat room component is

13 addressed with that, but there's nothing that -- we just want

14 to make sure that is not an issue because --

15         THE COURT:  Okay.

16         MR. WELDON:  -- when we start hearing questions

17 about, "Let's see the other chats that she's engaged in," you

18 know, all of those sorts of questions, we want to make sure

19 it's very clear that that can't come in.

20         MR. ARVANETES:  And, Your Honor, we don't object to

21 that.

22         THE COURT:  I agree.  I think Issue 3 is a more

23 explicit use of the evidence in Issue 2.  And, clearly, the

24 explicit use of any previous sexual history of the alleged

25 victim would be excluded under 412(a).  Issue 2, I just was not

1  comfortable making a definitive ruling yet until I have heard

2  what evidence the government intends to introduce.

3            All right.  Issue Number 4.

4            MR. WELDON:  Yes, Your Honor.

5            THE COURT:  The government would like to prevent

6  Mr. Kutzera from arguing that, in light of the fact the alleged

7  victim has a history of activities on the internet, it was her

8  idea to take photos and that the defendant could not have

9  engaged in the sexual encounter for the purpose of producing

10 the photographs.

11           Mr. Arvanetes, what's your response here?

12           MR. ARVANETES:  Well, I think, certainly, if there's

13 anything that comes up that I feel I should explain or ask

14 about, I would certainly sidebar.  I think the same reasoning

15 for Number 2 should go to Number 4.  I don't want to -- I mean,

16 because they are sort of cousins of each other, I do not want

17 to -- I guess, I think, instead of having a limited question

18 now, it may not -- I mean, I will certainly not bring it up.

19 If I feel it needs to be brought up, I will certainly have

20 either a motion outside the presence of the jury or a sidebar.

21           THE COURT:  I have also read the Ninth Circuit

22 opinion, United States versus Dhingra, which is 371 F.3d 557.

23 It's a 2004 opinion discussing this conflation of entrapment

24 with liability by the defendant.  And the court recognizes that

25 the notion that entrapment by the underaged victim would

ameliorate any inducement by the adult defendant; mistakenly
changes the focus from the defendant to the victim.  And the
court goes on to explain that the underaged victim's
willingness to engage in the sexual activity is irrelevant in
much the same way that a minor cannot consent to actual sexual
activity.  It would not mitigate the offence of statutory rape
or child molestation.

So, again, I would construe very strictly this rule
with regard to past sexual history.  It just depends whether
the alleged victim were to testify on direct in some manner
that would be prejudicial to Mr. Kutzera that would open the
door for me to allow Mr. Kutzera to cross-examine her about
other activity.

MR. ARVANETES:  Thank you.

THE COURT:  Are we clear on that?

MR. ARVANETES:  Yes, sir.

MR. WELDON:  Just to make sure --

THE COURT:  Go ahead, Mr. Weldon.

MR. WELDON:  So there would be no attempt to talk
about consent, unless the government were to open that door?

THE COURT:  That would be my inclination, yes.

MR. WELDON:  Thank you, Your Honor.

THE COURT:  Report back to Ms. Peterson.

MR. WELDON:  Yes, Your Honor.

THE COURT:  On the fifth issue, the government

1   requests that the Court exclude the defense from

2   cross-examining any witness about the psychological or

3   psychiatric history of the alleged victim without prior in

4   camera review of any records.  The government represents that

5   it's unaware of any diagnosed mental instability at the time of

6   the online communication that the alleged victim had

7   with Kutzera.

8              Mr. Arvanetes?

9              MR. ARVANETES:  There is in a police report -- I know

10  she was -- when she was arrested and talking to the police, I

11  think they wanted to do a psych on her because she was cutting

12  herself or suicidal in some way.  I am not interested in that

13  paperwork.  I don't think the psychological issues are relevant

14  to the elements and, also, in looking at the jury instructions

15  on it.  So I don't have an objection.  I am not bringing any of

16  that psych stuff in there.  I just simply don't think it's

17  relevant.

18             THE COURT:  Again, I agree.  I think it gets back to

19  the same issue of consent.  Whether the 14-year-old victim is

20  psychologically stable or unstable is irrelevant.

21             MR. ARVANETES:  Right.

22             THE COURT:  She is not able to provide consent even

23  if she were completely stable psychologically.  So I think the

24  same reasoning would apply there.  If you have any psychiatric

25  or psychological evidence related to the alleged victim, you'd

better bring it to my attention beforehand and get a ruling on

it.

           MR. ARVANETES:  Yeah, I don't have anything.  I'm

only going by the police report that said -- when they were

interviewing her, when she -- I guess it was when her mom

called the police.  When her mom saw the stuff on her phone,

she called the police, and she was pretty upset -- you know,

the victim was.  And so I think, you know, the police officer

was trying to just do the best he could.

           THE COURT:  Where was the alleged victim located?

           MR. ARVANETES:  Here in Great Falls.

           THE COURT:  Okay.

           MR. ARVANETES:  But now I -- but I think I can say

this too.  They moved out of state.

           THE COURT:  I was just curious.  I hadn't read the

indictment right before the hearing.  I couldn't recall the

venue hook here.

           MR. ARVANETES:  Yes.

           THE COURT:  All right.  So are we clear on that

issue, Mr. Weldon?

           MR. WELDON:  Yes, Your Honor.

           THE COURT:  Okay.  Now the sixth issue, sixth and

final, I believe; is that right?

           MR. WELDON:  Correct.

           THE COURT:  The government seeks to prevent

1   Mr. Kutzera from presenting evidence, statements, or questions

2   regarding the potential penalty he would face if convicted.

3   The government argues that such information would draw the

4   attention of the jury away from the chief function as the judge

5   of the facts, open the door to compromised verdicts, confuse

6   the issue to be decided.

7          Mr. Arvanetes, what's your response?

8          MR. ARVANETES:  My response is if there is an issue,

9   if I believe there is some case law or some slim argument, then

10  I would certainly bring it to the Court's attention when I

11  submit my jury instructions.

12         THE COURT:  All right.

13         MR. ARVANETES:  I've heard through the grapevine that

14  there's been some arguments about trying to get -- at least to

15  create a record on appeal for --

16         THE COURT:  Well, in this vineyard, we most recently

17  faced it in the last trial.  And the case law was strongly

18  against allowing -- that was the use of electronic

19  communications to entice a minor to engage in activities.  And

20  there was a mandatory minimum involved.  I can't remember the

21  length of it, but --

22         MR. ARVANETES:  I think it was ten, Your Honor.

23         THE COURT:  -- the case law that was presented to me

24  indicated that that was out of bounds; it would encourage jury

25  nullification that invades the province of the court.

1          Unless you have something new to bring to my
2  attention, I would doubt I would allow that kind of
3  questioning.
4          MR. ARVANETES:  I understand.  And, most
5  respectfully, if I submit it, it would be only to make a
6  record, Your Honor.
7          THE COURT:  Okay.  Anything else, Mr. Weldon?
8          MR. WELDON:  On that issue, Your Honor?
9          THE COURT:  Or any others you'd like to bring up.
10          MR. ARVANETES:  I think there's a second prong.
11          THE COURT:  What's the second prong, Mr. Weldon?
12          MR. WELDON:  It's just about character evidence, Your
13  Honor, and that is not disputed either.
14          THE COURT:  Whose character?  Mr. Kutzera or the
15  alleged victim?
16          MR. WELDON:  Mr. Kutzera's specific character
17  evidence, Your Honor.
18          THE COURT:  All right.  You know the rule,
19  Mr. Arvanetes?
20          MR. ARVANETES:  Yes.
21          THE COURT:  General reputation for character?
22          MR. ARVANETES:  No specific instances.
23          THE COURT:  Right, unless Mr. Weldon puts
24  Mr. Kutzera's character into evidence in a sloppy opening
25  statement or in questioning the witnesses.

1          All right.  Anything else we need to address,
2   Counsel?
3          MR. WELDON:  Your Honor, I just want to make sure I'm
4   clear as it relates to Issue Number 2, and that has to do with
5   the evidence relating to the other communications.  At this
6   point, you are just reserving your ruling to see how the
7   evidence comes in.  But, really, it's about the government
8   opening the door.  Is that right, Your Honor?
9          THE COURT:  Yes.
10          MR. WELDON:  Okay.
11          MR. ARVANETES:  And if I feel I need to make a
12   record, I'll certainly approach the bench and not do
13   anything to --
14          THE COURT:  You are always free to do that,
15   Mr. Arvanetes.
16          MR. ARVANETES:  Thank you, Your Honor.
17          THE COURT:  Anything else, Mr. Weldon?
18          MR. WELDON:  No, Your Honor.  I'm very clear.  Thank
19   you.
20          THE COURT:  Mr. Arvanetes?
21          MR. ARVANETES:  No, sir.
22          THE COURT:  So that takes care of all six issues in
23   our motion in limine?
24          MR. WELDON:  That is correct, Your Honor.
25          THE COURT:  All right.  That's all for today?

1            MR. WELDON:  That's correct, Your Honor.

2            THE COURT:  And when is the trial, Mr. Arvanetes?

3            MR. ARVANETES:  It's March 4th and 5th.

4            THE COURT:  Mr. Kutzera, are you still there, sir?

5            THE DEFENDANT:  Yes, Your Honor.

6            THE COURT:  Okay.  So you've heard the discussion

7   here.  And Mr. Arvanetes can explain, if you have any questions

8   for him about the rulings.

9            THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  All right.  We are going to cut off the

11   phone now, and you should contact Mr. Arvanetes for any

12   questions.

13            THE DEFENDANT:  Yes, Your Honor.  Thank you.

14            THE COURT:  All right.  We'll be in recess.  Thank

15   you.

16            MR. WELDON:  Thank you, Your Honor.

17        (The proceedings concluded at 3:02 p.m.)

18

19

20

21

22

23

24

25

REPORTER'S CERTIFICATE

I, Yvette Heinze, a Registered Professional Reporter and Certified Shorthand Reporter, certify that the foregoing transcript is a true and correct record of the proceedings given at the time and place hereinbefore mentioned; that the proceedings were reported by me in machine shorthand and thereafter reduced to typewriting using computer-assisted transcription; that after being reduced to typewriting, a certified copy of this transcript will be filed electronically with the Court.

I further certify that I am not attorney for, nor employed by, nor related to any of the parties or attorneys to this action, nor financially interested in this action.

IN WITNESS WHEREOF, I have set my hand at Great Falls, Montana, this 2nd day of January, 2018.


/s/ *Yvette Heinze*
_____
Yvette Heinze
United States Court Reporter