1  Yvette Heinze
   Register Professional Reporter
2  Certified Shorthand Reporter
   PO Box 7312
3  Helena, MT 59604-7312
   406-454-7805
4  yvette_heinze@mtd.uscourts.gov

5  United States Court Reporter

6

7
                 IN THE UNITED STATES DISTRICT COURT
8                  FOR THE DISTRICT OF MONTANA
                        GREAT FALLS DIVISION
9

10 UNITED STATES OF AMERICA,        )   No. CR 17-48-GF-BMM
                      Plaintiff,    )
11       vs.                        )
                                    )
12                                  )
   JAYCOB TYLER KUTZERA,            )   **TRANSCRIPT OF CHANGE OF**
13                    Defendant.    )   **PLEA**
                                    )
14

15

16            BEFORE THE HONORABLE BRIAN MORRIS
              UNITED STATES DISTRICT COURT JUDGE
17              FOR THE DISTRICT OF MONTANA

18
              Missouri River Federal Courthouse
19               125 Central Avenue West
                 Great Falls, MT 59404
20              Monday, March 5, 2018
                 9:48 a.m. to 10:36 a.m.
21

22

23

24
              Proceedings recorded by machine shorthand
25    Transcript produced by computer-assisted transcription

**APPEARANCES**

For the Plaintiff:

                Cyndee L. Peterson
                Assistant U.S. Attorney
                OFFICE OF THE U.S. ATTORNEY
                105 E. Pine Street
                Missoula, Montana 59802

For the Defendant:

                Evangelo Arvanetes
                FEDERAL DEFENDERS OF MONTANA
                104 2nd Street South, Suite 301
                Great Falls, MT 59401-3645

1                          PROCEEDINGS

2         (Defendant present.)

3         (Open court.)

4              THE COURT:  Please be seated.

5              Madam Clerk, please call the first case on the

6    Court's calendar.

7              THE CLERK:  This is the time set for a jury trial, in

8    Cause Number CR 17-48-GF-BMM, United States of America versus

9    Jaycob Tyler Kutzera.

10             THE COURT:  Good morning, Ms. Peterson.

11             MS. PETERSON:  Good morning, Your Honor.

12             THE COURT:  Good morning, Mr. Slaughter.

13             DETECTIVE SLAUGHTER:  Good morning, Your Honor.

14             THE COURT:  Who else do we have at counsel table?

15             MS. PETERSON:  Kimberly Taylor is my legal assistant,

16   Your Honor.

17             THE COURT:  Good morning, Ms. Taylor, hiding down

18   there.

19             Good morning, Mr. Arvanetes.

20             MR. ARVANETES:  Good morning, Your Honor.

21             THE COURT:  Good morning, Mr. Kutzera.

22             THE DEFENDANT:  Good morning, Your Honor.

23             THE COURT:  Ms. Peterson, we have a plea agreement?

24             MS. PETERSON:  We do, your Honor.

25             THE COURT:  Would you outline the terms for me,

1  please.

2         MS. PETERSON:  Yes, Your Honor.  The plea agreement

3  is entered pursuant to Rule 11(c)(1)(A) and (B).  Mr. Kutzera

4  has agreed to plead guilty to Counts 1, 5, and 36 of the

5  indictment.  The United States will dismiss the rest of the

6  counts in the indictment.  He's agreed to waive all right to

7  appeal.  He's agreed to admit the forfeiture allegation in the

8  indictment.  The United States will recommend three points for

9  acceptance of responsibility.  The parties have also

10  stipulated, as it relates to the guidelines within the plea

11  agreement, the specific special offense characteristics.  The

12  defendant has agreed to pay restitution and has agreed to waive

13  all right to appeal.

14         THE COURT:  All right.  Thank you, Ms. Peterson.

15         Has the victim been notified of this agreement?

16         MS. PETERSON:  Yes, Your Honor.  And she and her

17  mother are present in the courtroom.

18         THE COURT:  Do either of them wish to make an

19  appearance?

20         MS. PETERSON:  Do they want to make a statement, Your

21  Honor?

22         THE COURT:  Yes.

23         MS. PETERSON:  (Conferring).

24         No, Your Honor.

25         THE COURT:  All right.  Thank you.

1          Mr. Arvanetes, would you and Mr. Kutzera please

2   approach the podium.

3          MR. ARVANETES:  Yes, Your Honor.

4          THE COURT:  Mr. Kutzera, would you please raise your

5   right hand and be sworn as a witness.

6       (Defendant placed under oath.)

7          THE COURT:  Mr. Kutzera, you're now under oath.  If

8   you say something to me during this hearing that's false or

9   misleading, you could subject yourself to further prosecution

10  for admitting a false or misleading statement.

11         Do you understand, sir?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Mr. Kutzera, the hearing will take about

14  40 minutes.  At any point during the hearing, if you have any

15  questions or you need to speak with Mr. Arvanetes, please let

16  me know.

17         THE DEFENDANT:  Yes, Your Honor.

18         THE COURT:  Now, Mr. Kutzera, before I can accept any

19  pleas of guilty from you, I must be satisfied that your pleas

20  would be entirely voluntary.  I must be satisfied you

21  understand fully what's happening at this hearing.  I must be

22  convinced that you understand the charges against you.  I must

23  be convinced you understand the consequences of entering a

24  guilty plea.  I must be convinced that you understand the

25  potential penalties that you would face if you were to enter a

1  guilty plea and I were to accept that plea.  I must be

2  convinced you understand the rights you would be waiving if you

3  were to enter a guilty plea and I were to accept that plea.  I

4  also have to satisfy myself that the government could prove the

5  charges against you to which you intend to enter guilty pleas.

6           Do you understand so far, sir?

7           THE DEFENDANT:  Yes, Your Honor.

8           THE COURT:  All right.  Mr. Kutzera, I need to ask

9  you some background questions first.

10          How old are you?

11          THE DEFENDANT:  24 years old, sir.

12          THE COURT:  Are you married?

13          THE DEFENDANT:  No, sir.

14          THE COURT:  Any children?

15          THE DEFENDANT:  No, sir.

16          THE COURT:  Mr. Kutzera, what education have you had?

17          THE DEFENDANT:  I am a high school graduate.

18          THE COURT:  From where?

19          THE DEFENDANT:  Premier Academy.

20          THE COURT:  Where is that located?

21          THE DEFENDANT:  Apple Valley, California.

22          THE COURT:  What year was that?

23          THE DEFENDANT:  2011.

24          THE COURT:  Okay.  Is that a public school or a

25  private school?

1          THE DEFENDANT:  It's an adult education.  It's kind
2   of like a continuance, Your Honor.
3          THE COURT:  All right.  Any education after high
4   school?
5          THE DEFENDANT:  No, Your Honor.
6          THE COURT:  All right.  How about your -- any jobs
7   held?
8          THE DEFENDANT:  I work with my stepfather, Your
9   Honor, doing construction.
10          THE COURT:  Where is it?
11          THE DEFENDANT:  It's in Apple Valley, California, as
12   well.
13          THE COURT:  How long did you work for your
14   stepfather?
15          THE DEFENDANT:  I have been working now for about six
16   months, but I worked with him at previous times.  So all
17   together probably about five, six years.
18          THE COURT:  All right.  Any other jobs as an adult?
19          THE DEFENDANT:  When I lived in Arizona, I worked at
20   the Tempe Improv.  That was held for five months, Your Honor.
21          THE COURT:  Improv, like improvisational theater?
22          THE DEFENDANT:  Yes, Your Honor.
23          THE COURT:  What did you do there?
24          THE DEFENDANT:  I was a food runner.  I took food
25   from the kitchen to the patrons' plates.

1      THE COURT:  When did you live in Tempe, Arizona?

2      THE DEFENDANT:  Three years ago, Your Honor.

3      THE COURT:  For how long?

4      THE DEFENDANT:  Two years.

5      THE COURT:  All right.  Mr. Kutzera, I have some

6   medical questions for you now.

7      Have you ever been treated for any kind of mental

8   illness?

9      THE DEFENDANT:  No, Your Honor.

10     THE COURT:  Have you ever been treated for drug abuse

11  or alcohol abuse?

12     THE DEFENDANT:  No, Your Honor.

13     THE COURT:  Are you currently under the influence of

14  alcohol or any kind of drug?

15     THE DEFENDANT:  No, Your Honor.

16     THE COURT:  Are you currently under the care of a

17  doctor?

18     THE DEFENDANT:  No, Your Honor.

19     THE COURT:  Are you taking any kind of medications,

20  Mr. Kutzera, either prescription drugs or over-the-counter

21  drugs?

22     THE DEFENDANT:  No, Your Honor.

23     THE COURT:  Mr. Kutzera, is there anything about your

24  mental condition or your physical condition that limits your

25  ability to understand what's happening here today?

```
 1        (Off-the-record discussion between Mr. Arvanetes and
 2         defendant.)
 3             THE DEFENDANT:  I am taking classes every Tuesday
 4   down in Riverside County for depression, as a result of what
 5   has been going on.
 6             THE COURT:  All right.  This started after you were
 7   arrested?
 8             THE DEFENDANT:  Yes, Your Honor.
 9             THE COURT:  And who runs the classes?
10             THE DEFENDANT:  Her name is --
11             THE COURT:  Is she a medical person or therapist?
12   What's her title?
13             THE DEFENDANT:  She's a therapist.
14             THE COURT:  What does the class consist of?
15             THE DEFENDANT:  It's me and three other people who
16   are all going through similar things at the moment, similar
17   offenses.
18             THE COURT:  So it's a group therapy-type session?
19             THE DEFENDANT:  Yes, Your Honor.
20             THE COURT:  Okay.  And does she prescribe any
21   medication to you?
22             THE DEFENDANT:  No, Your Honor.
23             THE COURT:  And you are doing this one day a week?
24             THE DEFENDANT:  Yes, Your Honor.
25             THE COURT:  For how long, sir?
```

1   THE DEFENDANT:  It's been going on for three months,

2   three and a half months now, Your Honor.

3   THE COURT:  All right.  Have you been suffering from

4   depression since this happened?

5   THE DEFENDANT:  Yes, Your Honor.

6   THE COURT:  Any other treatment besides this weekly

7   class?

8   THE DEFENDANT:  No, Your Honor.

9   THE COURT:  No medications?

10   THE DEFENDANT:  No, Your Honor.

11   THE COURT:  All right.  So let me ask you again,

12   Mr. Kutzera:  Is there anything about your physical condition

13   or your mental condition that limits your ability to understand

14   what's happening at this hearing?

15   THE DEFENDANT:  No, Your Honor.  I fully understand.

16   THE COURT:  Pardon me?

17   THE DEFENDANT:  I fully understand.

18   THE COURT:  All right.  Mr. Kutzera, can you tell me

19   what we're doing at this hearing?

20   THE DEFENDANT:  We are finding me guilty of three

21   counts of sexual exploitation of a minor, Your Honor.

22   THE COURT:  So when you say, "finding you guilty,"

23   are you here to enter a plea?

24   THE DEFENDANT:  Yes.

25   THE COURT:  Is that part of an agreement you have

1   with the United States Government?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Okay.  Mr. Kutzera, let me tell you,

4   let's talk about the charges against you in this case.

5          Did you receive a copy of the indictment, sir?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Have you read it?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  Have you discussed it with Mr. Arvanetes?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Do you understand the charges alleged

12  against you?

13         THE DEFENDANT:  Yes, I do, Your Honor.

14         THE COURT:  All right.  I'm going to go through the

15  indictment with you, Mr. Kutzera.  The indictment charges you

16  with 36 counts of sexual exploitation of a child in violation

17  of Title 18, United States Code, 2251(a).

18         Do you understand those charges?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  As I understand it, the indictment is one

21  count for each of the videos or images.

22         Is that what your understanding is?

23         THE DEFENDANT:  Yes, Your Honor.

24         THE COURT:  Okay.  And, Mr. Kutzera, the indictment

25  also contains a forfeiture allegation in which the government

1   is seeking to seize a couple items of property, in particular,

2   a Hewlett-Packard slimline desktop computer and an

3   LG cellphone.

4           Do you understand those allegations, sir?

5           THE DEFENDANT:  Yes, Your Honor.

6           THE COURT:  Mr. Kutzera, do you understand -- it's my

7   understanding you previously came to this courthouse and

8   entered not guilty pleas to these charges.

9           Is that correct, sir?

10          THE DEFENDANT:  Yes, Your Honor.

11          THE COURT:  Do you understand, Mr. Kutzera, you have

12  a right to continue to plead not guilty to these charges, go to

13  trial, and force the government to try to prove these charges

14  against you?

15          THE DEFENDANT:  I do understand, Your Honor, yes.

16          THE COURT:  All right.  Instead of going to trial,

17  Mr. Kutzera, it's my understanding we have a plea agreement.

18          Is that correct?

19          THE DEFENDANT:  Yes, it is, Your Honor.  I am taking

20  responsibility for my actions.

21          THE COURT:  All right.  Mr. Kutzera, do you have a

22  copy of the plea agreement in front of you, sir?

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  The document I have is 11 pages in

25  length.  Is that what yours is?

1        THE DEFENDANT:  Yes, Your Honor.

2        THE COURT:  Please turn to page 11, sir.

3        On page 11, there's a signature line above

4   Jaycob Tyler -- or excuse me -- there's a signature line for

5   Jaycob Tyler Kutzera.  Is that your signature on that line,

6   sir?

7        THE DEFENDANT:  Yes, Your Honor.

8        THE COURT:  Mr. Kutzera, did you sign page 11 of your

9   plea agreement after you read every page and paragraph of it?

10        THE DEFENDANT:  Yes, Your Honor.

11        THE COURT:  Mr. Kutzera, do you see at the bottom of

12   each page the typed letters "DEF" for defendant?

13        THE DEFENDANT:  Yes, Your Honor.

14        THE COURT:  And, above that, someone's written the

15   initials JTK.

16        Did you write those initials?

17        THE DEFENDANT:  Yes, I did, Your Honor.

18        THE COURT:  Mr. Kutzera, did you initial the bottom

19   of each page of the plea agreement to indicate you understood

20   everything on that page?

21        THE DEFENDANT:  Yes, Your Honor.

22        THE COURT:  Thank you.

23        Now, Mr. Kutzera, please turn to paragraph 2 on

24   page 2 entitled "charges."

25        THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  According to paragraph 2, you're going to
2    enter guilty pleas to Count 1, Count 5, and Count 36, each of
3    which alleges the crime of sexual exploitation of a child.
4            Do you understand -- or is that what you are
5    intending to do here today, sir?
6            THE DEFENDANT:  Yes, Your Honor.
7            THE COURT:  And, Mr. Kutzera, if I accept this plea
8    agreement as stated at the bottom of page 2, the United States
9    will move to dismiss the remaining counts of the indictment at
10   the time of sentencing.
11           Do you understand, sir?
12           THE DEFENDANT:  Yes, I do, Your Honor.
13           THE COURT:  And it looks like at paragraph Number 10,
14   sir, on page 9, it's entitled, "Forfeiture."
15           Do you see that, sir?
16           THE DEFENDANT:  Yes, Your Honor.
17           THE COURT:  You're going give up your right, title,
18   and interest to the computer and the phone we talked about?
19           THE DEFENDANT:  Yes, Your Honor.
20           THE COURT:  Okay.  Go back to paragraph Number 9
21   entitled, "Restitution" on page 8.  You're agreeing to pay
22   reconstitution in this case.
23           Do you understand, sir?
24           THE DEFENDANT:  Yes, Your Honor.
25           THE COURT:  Now, if the amount of restitution -- it

1 could be up to $50,000.  That's your agreement.

2          Do you understand?

3          THE DEFENDANT:  Yes, Your Honor.

4          THE COURT:  If the amount of restitution would exceed

5 that amount, you wouldn't be bound by the paragraph and could

6 challenge that amount.

7          Do you understand, sir?

8          THE DEFENDANT:  Yes, Your Honor.

9          THE COURT:  On page Number 9, look at paragraph 11,

10 entitled, "waiver of appeal."

11          Do you see that paragraph, sir?

12          THE DEFENDANT:  Yes, Your Honor.

13          THE COURT:  According to paragraph 11, you are going

14 to waive your right to appeal your sentence in this case,

15 including conditions of release and orders of restitution, in

16 exchange for the government making concessions in this case.

17          Do you understand?

18          THE DEFENDANT:  Yes, Your Honor.

19          THE COURT:  You're also going to waive your right,

20 Mr. Kutzera, to bring any post-conviction attack on your

21 sentence.  Specifically, you won't file a motion pursuant to

22 Title 28, United States Code, Section 2255 or Section 2241 to

23 attack your sentence.  Those are commonly referred to as writs

24 of habeas corpus.

25          Do you understand that waiver, sir?

1      THE DEFENDANT:  Yes, Your Honor.

2      THE COURT:  Now, the waiver regarding filing a writ

3   of habeas corpus contains an exception.  If you were to allege

4   that Mr. Arvanetes had provided ineffective assistance of

5   counsel, you could seek to pursue a writ of habeas corpus.

6      Do you understand?

7      THE DEFENDANT:  Yes.  I do, Your Honor.

8      THE COURT:  One final paragraph, Mr. Kutzera, on

9   page 9 at paragraph 12, do you see that heading, "Megan's

10  Law/Adam Walsh Act Notice"?

11     THE DEFENDANT:  Yes, Your Honor.

12     THE COURT:  Paragraph 12 is notifying you that you

13  have a requirement under the -- you will have a requirement

14  under the Sex Offender Registration and Notification Act to

15  register in any jurisdiction in which you are living, which

16  you're going to school, in which this offense took place.

17     Do you understand that requirement, sir?

18     THE DEFENDANT:  Yes, Your Honor.

19     THE COURT:  Any questions so far, Mr. Kutzera?

20     THE DEFENDANT:  No, Your Honor.

21     THE COURT:  Mr. Kutzera, this 11-page plea agreement

22  we've just discussed, is this the only deal you have with the

23  United States Government?

24     THE DEFENDANT:  Yes, Your Honor.

25     THE COURT:  Any side deals I don't know about?

1          THE DEFENDANT:  No, Your Honor.

2          THE COURT:  Mr. Arvanetes, the 11-page plea agreement

3    we've just discussed, is that the best deal offered by the

4    United States Government in this case?

5          MR. ARVANETES:  There was an offer before.  There was

6    a deadline in November for two counts.  And that was slightly

7    better than this one.

8          THE COURT:  Okay.  Did you communicate all offers

9    from the United States Government to Mr. Kutzera?

10          MR. ARVANETES:  Yes, sir.

11          THE COURT:  How many were there?

12          MR. ARVANETES:  There was that one and this one.

13          THE COURT:  Mr. Kutzera, did you receive both offers

14    from Mr. Arvanetes?

15          THE DEFENDANT: Yes, Your Honor.

16          THE COURT:  Ms. Peterson, the 11-page plea agreement,

17    Mr. Arvanetes just informed me that there was an earlier offer,

18    that of two counts of the indictment.

19          Is that correct?

20          MS. PETERSON:  Correct, Your Honor.

21          THE COURT:  Okay.  And you agree that was a better

22    offer than the plea agreement here this morning?

23          MS. PETERSON:  Yes, Your Honor.

24          THE COURT:  Okay.  And those were the two offers made

25    to Mr. Arvanetes?

1          MS. PETERSON:  Yes, Your Honor.

2          THE COURT:  Thank you.

3          Now, Mr. Kutzera, let me talk to you for a moment

4    about Mr. Arvanetes.  Has he represented you throughout this

5    process?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Have you discussed your case with

8    Mr. Arvanetes?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  Have you discussed with Mr. Arvanetes the

11   charges the government alleges against you?

12         THE DEFENDANT:  Yes, Your Honor.

13         THE COURT:  Did you discuss the facts of your case

14   with Mr. Arvanetes?

15         THE DEFENDANT:  Yes, Your Honor.

16         THE COURT:  Did you discuss with Mr. Arvanetes

17   whether you had any potential defenses to those charges?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Did Mr. Arvanetes investigate this case

20   to your satisfaction?

21         THE DEFENDANT:  Yes, he did.

22         THE COURT:  Are you satisfied with Mr. Arvanetes's

23   representation?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Now, Mr. Kutzera, before I can accept any

1  plea of guilty from you, I must explain the potential penalties

2  you face if you were to enter a guilty plea and I were to

3  accept that plea.

4          THE DEFENDANT:  Yes, Your Honor.

5          THE COURT:  The punishment for each count of the

6  indictment is a mandatory minimum of 15 years in prison up to a

7  maximum of 30 years in prison.

8          Do you understand, sir?

9          THE DEFENDANT:  Yes, Your Honor.

10         THE COURT:  Followed by at least five years of

11  supervised release up to a lifetime of supervised release.

12         Do you understand, sir?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  A fine of up to $250,000 in each count

15  and a potential $5,000 special assessment on each count and a

16  $100 special assessment.

17         Do you understand, sir?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  Any questions about the potential

20  sentences?

21         THE DEFENDANT:  No, Your Honor.

22         THE COURT:  Mr. Kutzera, before I can accept any

23  pleas of guilty from you, I must explain the important

24  constitutional rights that you currently possess that you would

25  waive if you were to enter guilty pleas and I were to accept

1  those pleas.

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  First thing, Mr. Kutzera, this is a trial

4  court.  If you want to have a trial, either before a jury or

5  directly before me, you will get one.

6          Do you understand, sir?

7          THE DEFENDANT:  Yes, Your Honor.

8          THE COURT:  If you requested a jury trial, the jury

9  would be comprised of 12 people randomly selected from the jury

10 pool of licensed drivers and registered voters who live in the

11 Great Falls Division of this court.

12         Do you understand, sir?

13         THE DEFENDANT:  Yes, Your Honor.

14         THE COURT:  Mr. Kutzera, if you requested a trial,

15 you would be entitled to certain rights at that trial.  You

16 would have the right to confront all of the witnesses presented

17 by the government through cross-examination by Mr. Arvanetes.

18         Do you understand, sir?

19         THE DEFENDANT:  Yes, Your Honor.

20         THE COURT:  You would also have the right to be

21 represented by Mr. Arvanetes throughout the trial process.  His

22 services will be provided at no expense to you.

23         Do you understand, sir?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  Mr. Kutzera, if you requested a trial,

1  you would have the right to present witnesses on your behalf as

2  well.  And, if necessary, I could compel those persons to

3  attend the trial to testify in your behalf.

4          Do you understand, sir?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  And, Mr. Kutzera, if you requested a

7  trial, you would have the right to testify in your own defense.

8          Do you understand?

9          THE DEFENDANT:  Yes, Your Honor.

10          THE COURT:  And as importantly, Mr. Kutzera, if you

11  requested a trial, you would have the right not to testify.

12  You cannot be compelled to testify against yourself.

13          Do you understand, sir?

14          THE DEFENDANT:  Yes, Your Honor.

15          THE COURT:  Mr. Kutzera, if you went to trial and you

16  exercise your right not to testify, I would instruct the jury

17  they cannot consider your decision to exercise this right in

18  evaluating your guilt or innocence.

19          Do you understand, sir?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  Mr. Kutzera, if you went to trial, I

22  would instruct the jury on a number of important matters.  I

23  would instruct the jury, first, that you are presumed innocent.

24          Do you understand?

25          THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  I would instruct the jury that each

2  charge against you must be proven beyond a reasonable doubt.

3    Do you understand?

4    THE DEFENDANT:  Yes, Your Honor.

5    THE COURT:  I would instruct the jury the burden to

6  prove you guilty rests entirely with the United States

7  Government.

8    Do you understand, sir?

9    THE DEFENDANT:  Yes, Your Honor.

10    THE COURT:  I would instruct the jury that any

11  verdict, whether guilty or not guilty, must be unanimous.

12    Do you understand?

13    THE DEFENDANT:  Yes, Your Honor.

14    THE COURT:  Any questions, Mr. Kutzera?

15    THE DEFENDANT:  No, Your Honor.

16    THE COURT:  Mr. Kutzera, if you went to trial and you

17  were convicted, you would have the right to appeal your

18  conviction to the United States Court of Appeals with the Ninth

19  Circuit.  That court possesses the authority to set aside your

20  conviction and grant you a new trial if it were to determine

21  that I had made a legal error at trial or you had not received

22  a fair trial.

23    Do you understand, sir?

24    THE DEFENDANT:  Yes, Your Honor.

25    THE COURT:  Mr. Kutzera, if you were to enter guilty

1    pleas today and I were to accept those pleas, you would waive

2    all of these rights.  There would be no trial, so you'd have no

3    chance to confront the government's witnesses.

4             Do you understand?

5             THE DEFENDANT:  Yes, Your Honor.

6             THE COURT:  There would be no trial, so you'd have no

7    chance to call witnesses on your behalf.

8             Do you understand, sir?

9             THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  There would be no trial, so you'd have no

11   chance to testify on your own defense.

12            Do you understand, sir?

13            THE DEFENDANT:  Yes, Your Honor.

14            THE COURT:  You would be relieving the government of

15   its burden of proving you guilty because you would be admitting

16   your guilt.

17            Do you understand, sir?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  You also would waive your right to appeal

20   your conviction because, once again, you would be admitting to

21   your guilt.

22            Do you understand, sir?

23            THE DEFENDANT:  Yes, Your Honor.

24            THE COURT:  So, Mr. Kutzera, recognizing all of these

25   rights that you possess, do you wish to waive these rights so

1  you can enter a guilty plea, or do you wish to go to trial?

2          THE DEFENDANT:  I wish to take responsibility for my

3  actions that I have done and waive my rights.

4          THE COURT:  All right.  And enter guilty pleas?

5          THE DEFENDANT:  Yes, Your Honor, to further prevent

6  embarrassment of the victim and everything as well, Your Honor.

7          THE COURT:  Mr. Kutzera, I have explained the

8  potential penalties that you could receive if you were to enter

9  guilty pleas in this case.  Those are direct consequences of

10 your guilty pleas.

11         Collateral consequences also would flow from your

12 guilty pleas.  These collateral consequences include the losses

13 of certain civil rights.  You could lose your right to vote.

14 You'd lose your right to hold public office.  You'd lose your

15 right to serve on a jury or grand jury.  Those rights would be

16 restored automatically under Montana law once you've completed

17 your sentence.  You would have to discuss with Mr. Arvanetes

18 the effects of California law upon your restoration of civil

19 rights.

20         You'd also lose your right to possess a firearm, and

21 this ban on firearm ownership likely would last your entire

22 life.

23         Do you understand, sir?

24         THE DEFENDANT:  Yes, Your Honor.

25         THE COURT:  And as I mentioned, Mr. Kutzera, you also

would have to register pursuant to the Sex Offender
Notification and Registration Act.

     Do you understand, sir?

     THE DEFENDANT:  Yes, I do, Your Honor.

     THE COURT:  Any questions so far, Mr. Kutzera?

     THE DEFENDANT:  No, Your Honor.

     THE COURT:  Now, Mr. Kutzera, if I were to sentence
you to a term in prison, there's no possibility you could be
released early on parole.  Parole no longer exists in the
federal system.  It's likely you'd have to serve your entire
term in prison.

     Do you understand, sir?

     THE DEFENDANT:  Yes, Your Honor.

     THE COURT:  Now, Mr. Kutzera, if I were to sentence
you to a term in prison, it likely would be followed by a
period of supervised release.  Well, it would have to in this
case be followed by a period of supervised release, during
which time you would be under the supervision of the United
States Probation Office.

     During your period of supervision, you would be
required to comply with a number of standard conditions that
attach to any person convicted of a felony crime in this
district.  You'd also be required to comply with any special
conditions that I might tailor to your particular
circumstances.

1          If you violate any of these standard conditions or

2    any of these special conditions during your period of

3    supervision, I possess the authority to revoke your supervised

4    release and return you to prison.

5          Do you understand, sir?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  Mr. Kutzera, is anyone forcing you to

8    plead guilty today?

9          THE DEFENDANT:  No, Your Honor.

10          THE COURT:  Has anyone threatened you?

11          THE DEFENDANT:  No, Your Honor.

12          THE COURT:  Are you intending to plead guilty this

13    morning to cover up for someone else's wrongdoing?

14          THE DEFENDANT:  No, Your Honor.

15          THE COURT:  Now, Mr. Kutzera, the punishment you

16    receive in this case will depend in part on whether you have

17    any previous criminal history.  So I am going to ask you

18    directly, sir:  Do you have any prior felony convictions in

19    state court or federal court?

20          THE DEFENDANT:  No, Your Honor.

21          THE COURT:  Any questions, Mr. Kutzera?

22          THE DEFENDANT:  No, Your Honor.

23          THE COURT:  Mr. Kutzera, I'm going to explain the

24    sentencing process to you in federal court in more detail.  If

25    you were to enter a guilty plea and I were to accept that plea,

the United States Probation Office would prepare a presentence
investigation report.  This report would contain a calculation
of the recommended sentence range.

        To calculate your recommended sentencing range, the
probation office would first determine your base offense level.
Your base offense level attaches to the crimes to which you
have entered guilty pleas.  In this case, it would be the
sexual exploitation charges.

        The probation office has the discretion to adjust
you're offense level up or down depending on a variety of
circumstances.  For example, if you were to accept
responsibility for your crime, that would lower your offense
level.

        Do you understand, Mr. Kutzera?

        THE DEFENDANT:  Yes, Your Honor.

        THE COURT:  After the probation office has completed
any adjustments to your offense level, they would then
determine your criminal history category.  The probation office
would look to every encounter you have had with law
enforcement, whether as a juvenile or as an adult.  And that's
with state or federal law enforcement officers.  The probation
office scores each of those encounters with a zero, a one, a
two, or a three.  The probation office is concerned mainly with
what's called a scorable offense.  A scorable offense involves
a situation in which you are charged with a crime, convicted of

1    a crime, and the Court imposed sentence on you.

2              The probation office will add up any points you may

3    have earned from these encounters with law enforcement to

4    determine your total criminal history score.  And that criminal

5    history score translates to one of six criminal history

6    categories.

7              Do you understand so far, Mr. Kutzera?

8              THE DEFENDANT:  Yes, Your Honor.

9              THE COURT:  After we've determined your criminal

10   history category and your offense level, we look at this

11   sentencing chart.

12             Have you seen this before, Mr. Kutzera?

13             THE DEFENDANT:  I have not seen it before, Your

14   Honor, no.

15             THE COURT:  Do you have a copy in front of you, sir?

16             THE DEFENDANT:  Yes, Your Honor.

17             THE COURT:  All right.  Mr. Kutzera, on the left-hand

18   side, it shows offense levels that range from 1 to 43.  The

19   higher your offense level the longer your recommended sentence

20   range would be.

21             Do you understand?

22             THE DEFENDANT:  Yes, Your Honor.

23             THE COURT:  The first row across the top,

24   Mr. Kutzera, it shows criminal history categories that range

25   from 1 through 6.  The higher your criminal history category,

1  the longer your recommended sentencing range would be.

2        Do you understand, sir?

3        THE DEFENDANT:  Yes, Your Honor.

4        THE COURT:  Mr. Kutzera, after we've determined your

5  criminal history category and your offense level, we find the

6  intersection of those two points on the chart, and that

7  intersection reveals your recommended sentence range.  The

8  chart sets forth the recommended sentencing range in terms of

9  months of imprisonment.

10       Do you understand how that works, sir?

11       THE DEFENDANT:  Yes, Your Honor.

12       THE COURT:  Now, Mr. Kutzera, I need to emphasize

13  that standing here today we don't know exactly where you fall

14  on that chart until the US Probation Office completes the

15  presentence report and determines your offense level and your

16  criminal history category.  The best that you or I or

17  Mr. Arvanetes can do is make an educated guess as to where you

18  might fall on that chart.

19       Do you understand, sir?

20       THE DEFENDANT:  Yes, Your Honor.

21       THE COURT:  Any questions about the chart?

22       THE DEFENDANT:  No, Your Honor.

23       THE COURT:  Mr. Kutzera, after we've determined your

24  recommended sentencing range, then it's my obligation to

25  evaluate a number of factors set forth by the Congress at

1    Title 18, United States Code, 3553(a).  These factors could be

2    used to support a sentence longer than your recommended

3    sentencing range, or they could be used to support a sentence

4    shorter than your recommended sentence range.  It depends how

5    these factors apply to you.

6          The factors that I will evaluate include your history

7    and characteristics, the nature and circumstances of these

8    offenses, the need for just punishment, and the need to promote

9    respect for the law.

10         After I've evaluated those factors under 3553(a),

11   then I will conduct the sentencing hearing.  That's the last

12   step in the process.  At the sentencing hearing, Mr. Arvanetes

13   will have a chance to speak on your behalf to recommend an

14   appropriate sentence.  You have a right to speak at the

15   sentencing hearing.  Any family or friends can speak on your

16   behalf at the sentencing hearing.  Or, in the alternative, your

17   family and friends could submit written letters of support.

18         Ms. Peterson will be given a chance to speak on

19   behalf of the US Government to recommend an appropriate

20   sentence from its perspective, and the victim and her family

21   will also have a right to speak at the hearing.

22         At the end of the hearing, it's my obligation to take

23   into account all of the information I've received to determine

24   a sentence that would be sufficient but not greater than

25   necessary.

1          Do you understand how that process will work, sir?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  Any questions, Mr. Kutzera?

4          THE DEFENDANT:  No, Your Honor.

5          THE COURT:  Mr. Kutzera, I'm now going ask

6    Ms. Peterson to explain the elements the government must prove

7    before you can be found guilty of the offenses charged in the

8    indictment.

9          Let's start with -- what's the first count,

10   Ms. Peterson?

11         MS. PETERSON:  Your Honor, Counts 1, 5, and 36, all

12   have the same elements.  It's only the date that will change.

13         THE COURT:  All right.  What are those elements?

14         MS. PETERSON:  First, at the time of the crime,

15   Jane Doe was under the age of 18 years old; second, that on or

16   about -- for Count 1, it was April 7th of 2016 -- the defendant

17   knowingly employed, used, persuaded, induced, enticed, or

18   coerced the minor to take part in sexually explicit conduct for

19   the purpose of producing a visual depiction of such conduct;

20   and, third, knowing and having reason to know that such visual

21   depiction would be transported in and affecting interstate and

22   foreign commerce, and using materials that have been mailed,

23   shipped, and transported in and affecting interstate and

24   foreign commerce by any means, including by a computer.

25         For Count 5, the date in the second element is

1   July 10th, 2016.  For Count 36, the date in the second element

2   is October 1st of 2016.

3            With regards to the forfeiture allegation, the United

4   States would have to prove that the property identified in the

5   indictment was used to commit or facilitate the commission of

6   the three offenses.

7            THE COURT:  Thank you, Ms. Peterson.

8            Mr. Arvanetes, did Ms. Peterson correctly set forth

9   the elements for Count 1, Count 5, and Count 36?

10           MR. ARVANETES:  Yes, Your Honor.

11           THE COURT:  As well as the forfeiture allegations?

12           MR. ARVANETES:  Yes, sir.

13           THE COURT:  Thank you.

14           Ms. Peterson, would you now describe the proof the

15  government would present in this case if it were to go to

16  trial.

17           MS. PETERSON:  Yes, Your Honor.

18           On April 13th of 2016, the Great Falls Police

19  Department received information from the mother of a

20  12-year-old that we've referred to in the case as Jane Doe.

21  And at that time the mother and her daughter both lived in

22  Great Falls, Montana.  The mother had discovered that Jane Doe

23  had been engaging in text message conversations that were

24  explicit and very sexual in nature with a man named Jaycob.

25  The mother turned the daughter's cell phone over to the police

1   and allowed them to take over Jane Doe's online Facebook
2   account.
3           On April 14th of 2016, the Great Falls Police
4   Department Detective Jesse Slaughter determined that Jaycob was
5   the defendant, Jaycob Kutzera, who lived in California.
6           Detective Slaughter reviewed and preserved the
7   Facebook communications between Jane Doe and Kutzera.  The
8   communications are sexual in nature, and they include Jane Doe
9   sending sexually explicit image and video files to the
10  defendant.  The contents of the messages include
11  Defendant Kutzera requesting sexually explicit depictions of
12  Jane Doe.  Kutzera knew that Jane Doe was 12 years old.  And
13  the image and videos were sent on April 7th, July 10th, and
14  October 1st, all of 2016.  He utilized the computer and the
15  cell phone that are identified in the indictment to commit the
16  crimes.
17          THE COURT:  Thank you, Ms. Peterson.
18          Mr. Kutzera, did you hear what Ms. Peterson stated
19  the proof would be in this case if the government were to go to
20  trial?
21          THE DEFENDANT:  Sorry, Your Honor?
22          THE COURT:  Did you hear what Ms. Peterson just
23  stated the proof would be in this case if the government were
24  to go to trial?
25          THE DEFENDANT:  Yes, Your Honor.

1     THE COURT:  Have you reviewed the written offer of

2  proof presented by the government as well?

3     THE DEFENDANT:  Yes, Your Honor.

4     THE COURT:  Mr. Kutzera, is there anything that

5  Ms. Peterson stated here in open court or contained in the

6  written offer of proof with which you disagree or believe to be

7  wrong?

8     THE DEFENDANT:  No, Your Honor.

9     THE COURT:  Mr. Arvanetes, same question for you.

10     MR. ARVANETES:  No, Your Honor.

11     THE COURT:  All right.  Mr. Kutzera, would you tell

12  me what you did in this case, sir?

13     THE DEFENDANT:  I'm sorry, Your Honor.  Say again?

14     THE COURT:  Would you tell me what you did in this

15  case, please.

16     THE DEFENDANT:  I was in a very bad state of mind in

17  life, and I found Jane Doe online, and we proceeded to engage

18  in sexual conversations that led to sending pictures back and

19  forth, Your Honor.

20     THE COURT:  How did you find her?

21     THE DEFENDANT:  I found her through a sexual Facebook

22  group.

23     THE COURT:  All right.  Explain to me how that works?

24  You had a Facebook account?

25     THE DEFENDANT:  Yes, Your Honor.

1          THE COURT:  Okay.  And you joined a group?

2          THE DEFENDANT:  Yes, Your Honor.

3          THE COURT:  All right.  What was the purpose of that

4     group?  People who are interested in these kinds of sexual

5     encounters?

6          THE DEFENDANT:  Yes, Your Honor.

7          THE COURT:  How did you know?  Were they advertised

8     as such?

9          THE DEFENDANT:  I've partaken in sexual role play

10    with other adults before.

11         THE COURT:  But how did you find out about this

12    group?

13         THE DEFENDANT:  It was set up by another -- it's

14    usually recommended sometimes in Facebook and stuff like that.

15         THE COURT:  By other users?

16         THE DEFENDANT:  Just by Facebook, in general.

17    Facebook, in general.  Other users would recommend it and stuff

18    like that, Your Honor.

19         THE COURT:  So how did you discover it?

20         THE DEFENDANT:  I found it on a sidebar on Facebook,

21    and I thought --

22         THE COURT:  So how do you join?  What's the process?

23         THE DEFENDANT:  Depending on the privacy settings of

24    the group, you would have to click on "join request."  And then

25    an administrator of the group would either accept or decline

1    your request.  Or if it is a public group, you click on "join,"
2    and you automatically join the group.
3              THE COURT:  Some of these groups are administered
4    privately?
5              THE DEFENDANT:  Yes, Your Honor.
6              THE COURT:  And they can decide whom to admit and
7    whom to not?
8              THE DEFENDANT:  Yes, Your Honor.
9              THE COURT:  Was yours a public group or a private
10   group?
11             THE DEFENDANT:  I believe mine was a private group,
12   Your Honor.
13             THE COURT:  All right.  And you found Jane Doe.  Was
14   Jane Doe a member as well?
15             THE DEFENDANT:  Yes, Your Honor.
16             THE COURT:  And do you know who authorized her to be
17   a member?
18             THE DEFENDANT:  No, I do not, Your Honor.
19             THE COURT:  All right.  So then you send her a
20   message, or did she send you a message?  How did it start?
21             THE DEFENDANT:  She had put a post on, looking for
22   someone, and I responded to the said post.
23             THE COURT:  All right.  Now, when was this?  Do you
24   have any idea?
25             THE DEFENDANT:  No, Your Honor, I do not.

1          THE COURT:  And how long -- according to the

2    indictment, this happened in April of '16, July of '16, and

3    October of '16.

4          Does that sound right?

5          THE DEFENDANT:  Yes, Your Honor.

6          THE COURT:  Okay.  So before the April event, where

7    you exchanged pictures, how long had you been exchanging

8    messages with Jane Doe?

9          THE DEFENDANT:  I want to say a few weeks, Your

10   Honor.

11         THE COURT:  Daily?  Weekly?  How often?

12         THE DEFENDANT:  Daily, Your Honor.

13         THE COURT:  Ten times a day?  Once a day?

14         THE DEFENDANT:  Maybe 15 times a day, Your Honor.  We

15   were just exchanging messages.

16         THE COURT:  How long before you discovered Jane Doe's

17   age?

18         THE DEFENDANT:  That, I'm having trouble remembering,

19   Your Honor.

20         THE COURT:  Before April?

21         THE DEFENDANT:  I believe so.  Yes, Your Honor.

22         THE COURT:  All right.  Now, you say you've done this

23   with other people.  To your knowledge, were those people

24   adults?

25         THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:  So you discovered Jane Doe was 12 years
2    old.  Did you continued to exchange messages with her after
3    that point?
4                THE DEFENDANT:  Yes, Your Honor.
5                THE COURT:  You knew her age?
6                THE DEFENDANT:  Yes, Your Honor.
7                THE COURT:  And you exchanged videos, as well as
8    still photos?
9                THE DEFENDANT:  Yes, Your Honor.
10               THE COURT:  And you could tell from those videos and
11   still photos she was under 12 -- or she was under 18?  Excuse
12   me.
13               THE DEFENDANT:  Yes, Your Honor.
14               THE COURT:  You were requesting videos and photos of
15   her?
16               THE DEFENDANT:  Yes, Your Honor.
17               THE COURT:  Were you sending videos and photos of
18   yourself?
19               THE DEFENDANT:  Yes, Your Honor.
20               THE COURT:  Okay.  And you were doing this by means
21   of a computer?
22               THE DEFENDANT:  Yes, Your Honor.
23               THE COURT:  Okay.  Ms. Peterson, are you satisfied
24   with Mr. Kutzera's allocution?
25               MS. PETERSON:  Yes, Your Honor.  Thank you.

1          THE COURT:  That allocution will incorporate the

2    written offer of proof.

3          Has the document been filed yet, Madam Clerk?

4          THE CLERK:  It will be right after this hearing.

5          THE COURT:  All right.  And the record will reflect

6    whatever document number that will be.

7          All right.  Thank you.

8          Mr. Kutzera, I'm going to grant the motion -- I

9    guess, do we have a motion, Mr. Arvanetes, to withdraw the

10   previous not guilty pleas?

11         MR. ARVANETES:  I don't have a motion, Your Honor.

12         THE COURT:  Why don't you make a motion.

13         MR. ARVANETES:  I make a motion at this time, Your

14   Honor.

15         THE COURT:  All right.  I'll grant that motion to

16   withdraw the not guilty pleas that Mr. Kutzera previously

17   entered with regard to Count 1, Count 5, and Count 36.

18         Mr. Kutzera, I'm going to now ask you for your pleas.

19   Mr. Kutzera, how do you plead to Count 1 of the indictment that

20   charges you with sexual exploitation of a child in violation of

21   Title 18, United State Code, Section 2251(a), regarding an

22   incident on April 7th, 2016?

23         THE DEFENDANT:  Guilty, Your Honor.

24         THE COURT:  How do you plead, Mr. Kutzera, to Count 5

25   of the indictment that charges you with sexual exploitation of

1  a child in violation of Title 18, United States Code, Section

2  2251(a), regarding an incident on July 10th, 2016?

3                THE DEFENDANT:  Guilty, Your Honor.

4                THE COURT:  Mr. Kutzera, how do you plead to Count 36

5  of the indictment that charges you with sexual exploitation of

6  a child in violation of Title 18, United State Code,

7  Section 2251(a), regarding an incident on October 1st, 2016?

8                THE DEFENDANT:  Guilty, Your Honor.

9                THE COURT:  Mr. Kutzera, do you plead true or not

10 true to the forfeiture allegations regarding your use of the

11 Hewlett-Packard slimline desktop computer, as well as the

12 LG cellphone?

13                THE DEFENDANT:  True, Your Honor.

14                THE COURT:  So I find in the case of United States of

15 America versus Jaycob Tyler Kutzera, Cause Number

16 CR 17-48-GF-BMM, that Mr. Kutzera is fully competent and

17 capable of entering an informed plea.  I find that Mr. Kutzera

18 is aware fully of the nature of the charges to which he's

19 entered guilty pleas.  I find that Mr. Kutzera understands the

20 consequences of those guilty pleas.  I find Mr. Kutzera

21 understands the maximum punishment could include to up 30 years

22 imprisonment of each count, a fine of up to $250,000, up to a

23 lifetime of supervised release, a $5,000 assessment, and a $100

24 special assessment.

25                It's also my finding that Mr. Kutzera's plea of

guilty represents a knowing and voluntary plea supported by an
independent basis in fact that establishes each of the
essential elements of the offense.

Mr. Kutzera, I believe if a jury heard the proof
provided by the government, it would find beyond a reasonable
doubt that you are guilty of sexual exploitation of a child as
charged in Count 1, Count 5, and Count 36 of the indictment.

I am further satisfied, based upon your own sworn
testimony here in open court, that you are, in fact, guilty of
these offenses.

Mr. Kutzera, I accept your pleas of guilty to the
three charges of sexual exploitation of a child in violation of
Title 18, United States Code, Section 2251(a).  And I also
accept your plea of true to the forfeiture allegation.

Mr. Arvanetes, do we have an agreement regarding
restitution or just the not to exceed 50,000?

MR. ARVANETES:  At this time, I don't have any
figures in front of me.  So we'll have to approach that at
sentencing.

THE COURT:  Ms. Peterson, the restitution here will
involve any counseling or other fees incurred by the victim?

MS. PETERSON:  Yes, Your Honor, travel costs, things
of that nature, yes.

THE COURT:  All right.  And when will you have that
presented?

1       MS. PETERSON:  We will sit down with the victim and

2    her mom in the next month, likely, and she'll start gathering

3    expenses.  It should be included in the draft PSR, Your Honor.

4       THE COURT:  All right.  Thank you, Ms. Peterson.

5       Mr. Arvanetes, you and Mr. Kutzera may be seated,

6    please.

7       Mr. Kutzera, I want to explain to you what will

8    happen next.  Now that you've entered guilty pleas and I've

9    accepted those pleas, you are going to be interviewed by the

10   United States Probation Office.  I want to emphasize how

11   important it is that you are truthful and honest with the

12   probation officer during the interview.  If you fail to be

13   truthful or honest with the probation officer during the

14   interview, that fact could affect the sentence you receive.

15       Do you understand, sir?

16       THE DEFENDANT:  Yes, Your Honor.

17       THE COURT:  Mr. Kutzera, I want to emphasize you also

18   have an absolute right to have Mr. Arvanetes present for the

19   interview with the probation officer.  You can decline to

20   answer any questions from the probation officer based upon

21   advice from Mr. Arvanetes.

22       Do you understand, sir?

23       THE DEFENDANT:  Yes, Your Honor.

24       THE COURT:  Mr. Kutzera, after the probation officer

25   completes the interview, they will seek to verify the

1  information you provided.  They will contact your family and

2  acquaintances and conduct background research.  They will

3  compile this information into a presentence investigation

4  report.  You and Mr. Arvanetes will receive a draft version of

5  that report to review.  If you believe any information in that

6  draft report is wrong or incorrect in any way, you and

7  Mr. Arvanetes may raise objections to it.  I receive the final

8  version of the presentence report.  That final version will

9  contain any objections that you and Mr. Arvanetes may have

10  raised.

11       After I have the final version of the report, I will

12  conduct the sentencing hearing.  At the sentencing hearing, if

13  necessary, I first will address any objections you and

14  Mr. Arvanetes may have raised to the presentence report.  After

15  I have resolved any objections you raised, then I will allow

16  Mr. Arvanetes to speak on your behalf.  You have a right to

17  speak at the hearing.  Any family or friends may speak at the

18  hearing on your behalf, or they may submit written letters in

19  support.  Ms. Peterson then gets a chance to speak on behalf of

20  the United States Government.  And the victim and her family

21  also have a right to speak at the sentencing hearing.  At the

22  end of that hearing, Mr. Kutzera, it's my obligation to impose

23  the sentence.

24       Do you understand that process, sir?

25       THE DEFENDANT:  Yes, Your Honor.

1    THE COURT:   The presentence process typically takes

2    about 90 days to complete.   So I'm going to set the sentencing

3    hearing in this matter for Wednesday, June 13th, 2018, at

4    10:00 a.m. at this courthouse in Great Falls.

5         Ms. Peterson, I see Mr. Kutzera is not in custody at

6    this time.   What's the government's position?

7         MS. PETERSON:   Your Honor, we set forth the standard

8    in paragraph 13 of the plea agreement, and we believe that he

9    should be detained based upon his change of plea today.   I'm

10   unaware of any exceptional circumstances that exist that would

11   warrant release pending sentencing.

12        THE COURT:   Mr. Arvanetes, what's your view?

13        MR. ARVANETES:   Your Honor, Mr. Kutzera wishes to be

14   released.   He has done -- I know that he's done exceptional, at

15   least in the context of following conditions of his

16   supervision.   He's on an ankle bracelet.   He's doing

17   counseling.   He is working.   He's following all of the

18   conditions of his probation officer who is monitoring him.   And

19   he has been vigilant in always contacting me and being in

20   contact with me, either he or his family.   And he wishes to be

21   released.

22        THE COURT:   Do we have a bond in California?

23     (Off-the-record discussion between Mr. Arvanetes and the

24      defendant.)

25        MR. ARVANETES:   Yes, Your Honor.   There is a bond in

1   California.

2          THE COURT:  What's the amount of the bond?

3      (Off-the-record discussion between Mr. Arvanetes and the

4          defendant.)

5          MR. ARVANETES:  It's his parents house and $100,000.

6          THE COURT:  All right.  Mr. Arvanetes, do we have any

7   concerns about Mr. Kutzera's emotional state?  I know he said

8   he's suffering from depression.

9          MR. ARVANETES:  He's suffering from depression.  One

10  of the comments he made today was "I'm glad that I can accept

11  responsibility and that there's a sense of closure."  And so I

12  think that's almost a positive in this plea situation.  He

13  senses a closure, a sense of foundation to be prepared.  We're

14  going to be asking for prison in California, where it will be

15  close to his family, within an hour or so.

16         THE COURT:  Does Mr. Kutzera have a passport?

17         THE DEFENDANT:  No, Your Honor.

18         MR. ARVANETES:  He does not have a passport.

19         THE COURT:  All right.  And he's not allowed to apply

20  for one at this point.  I know we had a case with Ms. Peterson,

21  I believe, in which a defendant obtained a passport after the

22  indictment.

23         Were you involved in that case?

24         MS. PETERSON:  I was, Your Honor.

25         THE COURT:  That's right.

1          Well, I am going to allow Mr. Kutzera to remain at
2   liberty.  He has appeared here in Montana from California for
3   both the arraignment and this appearance.  He's also been on
4   telephone appearances on a number of hearings.  I do not have
5   any reports of any problems on his pretrial release, and we do
6   have the bond in California, which his parents put up the title
7   on their house, as well as $100,000 cash bond.

8          So in light of those safeguards, I will allow
9   Mr. Kutzera to remain at liberty subject to the same conditions
10  that were put in place upon his original release.

11         Mr. Kutzera, I'll point out as well, you have now
12  entered three guilty pleas to felony charges.  And the
13  presumption, at this point, that any deviation from the
14  conditions, then you will be picked up.  And that will harm
15  your placement with the Bureau of Prisons if you have any
16  problems before your sentencing.

17         Do you understand, sir?

18         THE DEFENDANT:  Yes, Your Honor.

19         THE COURT:  So, Mr. Barsotti, do we need anything
20  from Mr. Kutzera before he leaves today?

21         MARSHAL:  No, sir.

22         THE COURT:  Thank you.

23         All right.  Anything else from you, Ms. Peterson?

24         MS. PETERSON:  No, Your Honor.  Thank you.

25         THE COURT:  Mr. Arvanetes?

1            MR. ARVANETES:  No, Your Honor.  Thank you.

2            THE COURT:  So, Ms. Peterson, you will meet with the

3    victim and her family in the next couple of weeks to work out

4    any restitution, as well as discuss with them their right to

5    appear at the sentencing hearing.

6            MS. PETERSON:  Yes, Your Honor.

7            THE COURT:  Thank you, Ms. Peterson.

8            Mr. Arvanetes, thank you.

9            Mr. Kutzera, we'll see you back here in June for your

10    sentencing.

11            We'll be in recess.

12        (The proceedings concluded at 10:36 a.m.)

REPORTER'S CERTIFICATE

I, Yvette Heinze, a Registered Professional Reporter and Certified Shorthand Reporter, certify that the foregoing transcript is a true and correct record of the proceedings given at the time and place hereinbefore mentioned; that the proceedings were reported by me in machine shorthand and thereafter reduced to typewriting using computer-assisted transcription; that after being reduced to typewriting, a certified copy of this transcript will be filed electronically with the Court.

I further certify that I am not attorney for, nor employed by, nor related to any of the parties or attorneys to this action, nor financially interested in this action.

IN WITNESS WHEREOF, I have set my hand at Great Falls, Montana, this 22nd day of August, 2018.


                                    /s/ Yvette Heinze
                          _____
                                    Yvette Heinze
                                    United States Court Reporter